White, J.
The principal contention in this case may be resolved into two questions:
1. Whether the power vested in the President and Trustees of the Ohio University by section 12 of the act of February 18, 1804 (Ohio Land Laws, 226), to demand a further yearly rent, on the land leases under the act, not exceeding the amount of state tax imposed on like description of property, is required, in order to justify its exercise against the lessees, to be incorporated into the leases, and express provision therein made for the exercise of the power ?
2. If such is not the effect of the act of February 18, 1804, whether the amendatory act of February 21, 1805 (Id. 232) does not require such provision to be made in the leases.
A brief reference to some of the provisions of the act of 1804 will enable us to answer the first question. Section 3 of the act prescribes, that certain persons named, and their successors, shall be, and they are thereby created a body politic and corporate, by the name of “ The President and Trustees of the Ohio University.” Section 11 provides : “ That the two townships, eight and nine, in the fourteenth range of townships, within the grant of land made by congress to' the Ohio Company of Associates, be, and they are hereby vested in the corporation by this act created, in trust, for the sole use, benefit and support of the said university forever.”
*121 Section 17 is as follows: “ That the lands in the two townships, appropriated and vested as aforesaid, with the buildings which are, or may be erected thereon, shall forever be exempted from all state taxes.”
Section 12 provides for laying off the lands (except such as are included in the town of Athens), or such part thereof as may be deemed expedient, into tracts of not less than eighty, nor more than two hundred and forty acres, and for estimating the value of the same as in their original and unimproved state. The section also provides that after the lands shall have been thus laid off and estimated, the trustees, after giving notice as prescribed in the act, “ shall proceed to make out leases of said tracts to such of the present occupants as shall apply for the same within three months after such notice given, and to all persons who shall apply thereafter, for the term of ninety years, renewable forever, on a yearly rent of six per centum on the amount of the valuation so made.” The section also provides that, “the land so leased shall be subject to a re-valuation ” at certain periods, and that the lessee shall pay a yearly rent of six per centum on the amount of the re-valuation. At the expiration of the term of ninety years the rent is subject to be regulated by the price of wheat, in the mode provided for in the section.
The proviso to the section, and on which the present controversy arises, is as follows: “ Provided, always, that the said corporation shall have power to demand a further yearly rent on said lands and tenements, not exceeding the amount of tax imposed on property of like description by the state, which rents shall be paid at such time and place, to such persons, and collected in such manner as the corporation shall direct.”
Now, it seems clear to us, that the statute does not contemplate that the leases should contain a provision for the payment by the lessees of the additional rent provided for in the proviso. This additional rent is not to exceed the amount of the state tax on libé description of property. The property leased is held by the corporation in trust for the sole benefit and support of the university; and the exemption from state taxes is intended for the benefit of the trust. The rent which *122 the corporation by the proviso is authorized to demand, is in addition to what is stipulated for in the lease.
The trustees were to make leases for the term of ninety years, renewable forever, on a yearly rent of six per centum on the first valuation. The “ lands so leased ” were, by force of the statute, subject to a re-valuation ; and they were also subject to the additional charge or rent provided for in the pro viso. The right to demand this “ further yearly rent ” springs from the statute, and is independent of any express stipulation therefor in the lease.
The answer to the second question depends upon whether the proviso to section 12, above referred to, was repealed by the act of February 21, 1805. That it was not expressly repealed is conceded. The only question is whether the proviso was repealed by implication. The only section in the act of 1805 bearing on the question is the first. That section appoints five persons named as appraisers, and requires them, or any three of them, to appraise townships eight and nine, within nine months, at the present real value of the land in its original and uncultivated state, and to make report thereof to the trustees. It also provides that “ the said trustees shall lease the same to any persons who have or may apply, agreeable to law, for the term of ninety-nine years, renewable forever, with a fixed annual rental of six per centum on the appraised valuation; provided, that no land shall be leased at a less valuation than at the rate of one dollar and seventy-five cents per acre.”
We discover no repugnancy between this section and the power vested in the corporation by the proviso contained, in section 12 of the act of 1804. As already remarked, the demand -which the corporation is authorized to make, under the proviso, is in addition to the rent stipulated for in the lease, and exists independently of such stipulation. The language of section 1 of the act of 1805, already qifoted, refers to what is to be embodied in the lease, and has no reference to the additional charge, in lieu of taxes, which the statute authorizes to be imposed, irrespective of the stipulations in the lease. Hence, whether we regard the matter now in controversy as *123 res integra, or as controlled by the decision in Mc Vey v. Ohio University (11 Ohio, 131), we are led to the same result.
3. The validity of the resolutions of the board of trustees, under which the additional rent is demanded, is questioned on several grounds.
1. It is claimed that the resolutions were not passed by the trustees in the exercise of their own judgment, but under the imperative command of the legislature.
The substance of the objection is, as we understand it, that the trustees, in adopting the resolutions, acted under coercion. In answer to this objection it may be said in the first place that no such fact is averred in the petition, and, in the absence of such averment, the fact cannot be presumed. Furthermore, we need not now inquire into the extent to. which the action of the trustees is subject to legislative control. Whatever may be the extent of such control, it existed when the leases were made, and they were taken subject to it. But assuming, in the present instance, that the trustees in their action were not subject to be controlled by the legislature, they must in that case be presumed to have known it, and, hence, to have regarded the action of the legislature as merely in the nature of advice or recommendation.
2. It is also objected that the resolutions do not determine the amount of further rent which the treasurer is directed to collect, but undertake to delegate to him the power to determine the amount.
It seems to us that on a fair construction of the resolutions no discretion is given to the treasurer to determine the amount of rent to be collected; but that he is required to collect such an amount of additional rent as equals the taxes imposed on property of like description by the state.
3. The resolutions are also objected to on the ground that they are retroactive in their operation.
The resolutions were passed June 21, 1876, and directed the treasurer to proceed on the first day of January, 1877, to collect the additional rent for the year and a half next preceding, and thereafter, annually, on the first day of January.
In the opinion of a majority of the court, the right to exact *124 the additional rent does not extend back of the year of the term current at the time of the adoption of the resolutions. From tire leases attached to the petition, it appears that in each of those instances the term began on the first of January, and that the rent is payable on the first of January, at the end of each successive year of the term. In those instances the current year of the term at the time of the adoption of the resolutions, was the year beginning January 1,1876, and ending January 1, 1877.
The power of the corporation is to demand “ a further yearly rent; ” and it seems to us this power cannot be exercised with respect to years of terms that are past, but must be limited to the current year, and to those that are to come.
If the additional rent can be exacted for six months of a preceding year of the term, we see no reason why the exaction may not be extended back indefinitely. True, the statute provides that such additional rent is to be paid at such time and place, and to such person as the corporation shall direct. But the question here is, to what extent does the determination of the corporation become operative upon the lessees, and bind them to pay the additional charge? As already remarked, it seems to us the charge cannot be made to extend back of the current rental year of the lease.
The demurrer to the petition will be overrruled, and the collection of the additional rent to the extent above indicated will be enjoined ; and as to all other matters, the petition will be dismissed.
Johnson, J., being a trustee of the university, did not sit in the case.